**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE: SUNBUM5 ENTERPRISES, LLC**

**Case No. 6:10-cv-1268-Orl-28**
**consolidated with**
**Case No. 6:10-cv-1269-Orl-28**

**Bankr. Ct. Case No. 6:09-bk-14839-ABB**

_____

# ORDER

These cases are appeals from two orders of the bankruptcy court: one granting a motion for a determination that a law firm did not have a conflict of interest in representing the Chapter 7 trustee and one granting a motion filed by that law firm on the trustee's behalf for relief from the automatic stay and denying the debtor's motion to compel abandonment of estate property. Both orders are reversed.

## I. Background

For some time prior to December 1, 2004, Larry and Rita Gregory ("the Gregorys") owned and operated a lawn maintenance business. On that date, the Gregorys entered into an Asset Purchase Agreement ("APA") with the Debtor in this bankruptcy matter, Sunbum5 Enterprises, LLC ("Sunbum5"), whereby Sunbum5 purchased certain assets of the business—including customer lists, contracts, and commitments—for $800,000. Part of the purchase price was to be paid in accordance with the terms of two promissory notes signed on behalf of Sunbum5 by its sole owner, Rickey Beard ("Mr. Beard"). Additionally, the APA included a noncompete provision barring the Gregorys from competing with Sunbum5 for a

five-year period.

Less than a year later, on September 27, 2005, the Gregorys' daughter incorporated a business that engaged in the lawn, tree, and shrub care business in competition with Sunbum5. Nearly two years later, on June 26, 2007, an employee of Sunbum5's business who, prior to the APA, had worked for the Gregorys' business left Sunbum5's business and began working for the Gregorys' daughter's competing business. On August 14, 2007, Sunbum5 filed a lawsuit in state circuit court in Volusia County, Florida ("the Volusia County suit") against the Gregorys, the former employee, and the daughter's business, asserting, inter alia, a claim of breach of the noncompete agreement against the Gregorys and requesting injunctive relief and damages. Sunbum5's request for preliminary injunctive relief early in that case was denied.

On November 14, 2007, the Gregorys—represented by the law firm of Kosto & Rotella, P.A. ("the Law Firm")—filed suit against Sunbum5 in circuit court in Seminole County, Florida, alleging that as of September 1, 2007, Sunbum5 was in default on the two promissory notes that had been executed in connection with the APA. That suit was later transferred to circuit court in Orange County, Florida. In that suit ("the Orange County suit") Sunbum5 filed an Answer and Affirmative Defenses in which it asserted, inter alia, that the Gregorys had acted in bad faith and with unclean hands and that the Gregorys' prior breach of the APA barred their suit; that document specifically mentioned the Volusia County suit.

Summary judgment was entered in favor of the Gregorys in the Orange County suit on December 17, 2008. In that summary judgment, the state court judge found Sunbum5 in default on the APA and the promissory notes. After summary judgment was entered in

the Orange County suit, the Gregorys allegedly learned that Sunbum5 had transferred the lawn care business to another entity, MBN Services, LLC ("MBN"), which ostensibly had been set up by Mr. Beard's wife, Molly Beard ("Mrs. Beard"). The Gregorys—still represented by the Law Firm—then filed supplemental proceedings in state court to set aside that transfer as a fraudulent conveyance.

On October 1, 2009, Sunbum5 filed a Chapter 7 bankruptcy petition, and Carla Musselman ("the Trustee") was appointed as trustee on October 2, 2009. On October 5, 2009, the Law Firm filed a Notice of Appearance on behalf of the Gregorys in Sunbum5's bankruptcy case. (Bankr. Ct. Doc. 4). On December 5, 2009, the Trustee filed an Application to Authorize Employment, requesting an order approving the employment of the Law Firm to assist her "with the investigation and recovery of possible preferential transfers, and to otherwise assist [her] in discharging [her] statutory duties." (Bankr. Ct. Doc. 6 at 1). The Trustee's Application and the Declaration of the Law Firm included therewith noted that the Law Firm already represented the Gregorys–scheduled unsecured creditors—and had previously been pursuing MBN to set aside the fraudulent transfer.[1] (Id. at 1-3). No mention was made in the Application or Declaration, however, of Sunbum5's still-pending Volusia County suit against the Gregorys. (See id.). On December 15, 2009, the bankruptcy court entered an order authorizing and approving the employment of the Law Firm by the Trustee.[2]

---

[1]Once Sunbum5 filed its Chapter 7 petition, the state court efforts of the Gregorys to set aside the asset transfer to MBN had to cease pursuant to the automatic stay of 11 U.S.C. § 362(a).

[2]In that order, the court concluded that "[b]ased upon the facts set forth in the application and declaration by the proposed attorney . . . [the Law Firm] does not hold or

(Bankr. Ct. Doc. 7).

Four months later, on April 14, 2010, the Law Firm filed a "Motion for Order Determining that [the Law Firm] Does Not Have a Conflict of Interest in Representing the Trustee" (Bankr. Ct. Doc. 14).[3]  In that motion, the Law Firm noted the Volusia County suit but asserted that the summary judgment that was entered in the Orange County suit precluded the Trustee from pursuing the Gregorys in the Volusia County suit because of the doctrine of estoppel by judgment.  (Id. at 2).  The Law Firm additionally noted that Sunbum5 had not listed a claim or pending lawsuit against the Gregorys in its bankruptcy schedules; that Sunbum5 had not pursued its claims in the Volusia County suit; and that Sunbum5's attorney had withdrawn from the Volusia County suit after the court issued a notice of lack of prosecution.

On May 10, 2010,[4] the bankruptcy court held a hearing on the Law Firm's motion.

_____

represent an interest adverse to the estate and is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code."  (Bankr. Ct. Doc. 7).

[3]This motion was filed shortly after counsel for Mrs. Beard—who by then was engaged in settlement talks with the Trustee regarding the allegedly fraudulent transfer to MBN—sent a letter to the Trustee stating that in light of the Sunbum5's still-pending Volusia County suit against the Gregorys, the Trustee could not be represented by the Law Firm.   (Ex. A to Bankr. Ct. Doc. 14).  Mrs. Beard's attorney informed the Trustee in that letter that if the Trustee did not "retain[] new counsel within ten (10) days . . ., [he would] notice [his] appearance and file a Motion to Disqualify [the Law Firm] from representing the Bankruptcy Trustee."  (Id. at 2).

[4]It appears from the bankruptcy court docket sheet that on April 28, 2010—after the filing of the Law Firm's April 14 motion but before the May 10 hearing thereon—the Trustee initiated an adversary proceeding against MBN, Mrs. Beard, and the Beards' two sons to recover fraudulently transferred property.  (See Doc. 1-3 at 5 (docket entry for Bankr. Ct. Doc. 17)).  However, the filings in that adversary proceeding have not been made a part of the record in this appeal in the main bankruptcy case.

(See Pro Memo, Bankr. Ct. Doc. 18; May Hr'g Tr., Bankr. Ct. Doc. 62). During that hearing, both counsel for Sunbum5 and counsel for Mrs. Beard[5] noted objections to the Law Firm's employment, but the Trustee endorsed the employment. (May Hr'g Tr. at 3). Mrs. Beard's counsel asserted that there was a "clear conflict of interest" because the Law Firm represented the Gregorys—the defendants in the Volusia County suit—and now was ostensibly also going to represent the Trustee, who would step into the shoes of the Debtor as the plaintiff in that same lawsuit. (Id. at 6-7). The bankruptcy judge inquired as to the status of the Volusia County suit, and counsel for Mrs. Beard explained that Sunbum5's motion for a preliminary injunction had been denied early in the case and that the last record activity was in October 2009. (Id. at 7-8).

The Law Firm stated at the hearing that the Trustee had "evaluated the situation" and "believes that there's no conflict." (Id. at 8). Further, the Law Firm asserted that "[t]he issues that were . . . raised in [the Volusia County suit] were also asserted as affirmative defenses in the Orange County case." (Id.). The Law Firm noted that counsel for Sunbum5 had withdrawn in the Volusia County suit and that the October 2009 record activity that Mrs. Beard's counsel had referred to was the motion to withdraw, prior to which there had been no record activity for a year. (Id. at 8-9).

The bankruptcy court asked whether, if the Gregorys prevailed in the Volusia County suit, that would have an adverse impact on the bankruptcy estate. (Id. at 10). The Law Firm

---

[5]Mrs. Beard's counsel asserted that Mrs. Beard was a creditor of Sunbum5 and stated that under 11 U.S.C. § 327(c), she objected to the Trustee's employment of the Law Firm. (May Hr'g Tr. at 6).

responded that prevailing would "just mean[] there would be no injunction." (Id.). Mrs. Beard's counsel then asserted that not only an injunction but damages were at issue in the Volusia County suit because Sunbum5 had alleged damages from the Gregorys' competition with Sunbum5. (Id.). The Law Firm then argued that in the Orange County suit, the court had "already found that there was a prior breach which excused the Gregorys" and that in order for the Volusia County suit to proceed, the court in Volusia County would have to rule in a manner contrary to the court in Orange County, "which has already decided the issue." (Id. at 10-11). Additionally, the Law Firm reiterated that Sunbum5 had not listed its claim against the Gregorys as an asset and argued that Sunbum5's assertion of a conflict was "simply calculated to try to deprive [the Trustee] [of] the attorney she seeks to retain—to represent her." (Id. at 11).

The court then asked the Trustee if she planned to do anything with the Volusia County suit, and she responded that she was not going to do anything with it because it would be too costly and would bring no benefit to the estate. (Id. at 12). The court then instructed the Trustee to "file something with that Court and then file something with this Court that solves the problem." (Id.). Counsel for Sunbum5 requested that the Trustee abandon the Volusia County suit rather than dismiss it so that Sunbum5 could then "pick it up again."[6] (Id. at 13-14). The court asked the Trustee to "file whatever action you have to [to] get yourself out of it, either abandonment or dismissal," (id.), and the court then announced that "based upon that" the Law Firm's motion as to a lack of conflict would be

---

[6]As will be explained later in the text of this Order, when estate property is abandoned, the property reverts to the debtor as if no bankruptcy petition had been filed.

granted, (id. at 15).

Two days after the hearing, on May 12, 2010, the Trustee, through the Law Firm, filed a Motion for Relief from Stay. (Bankr. Ct. Doc. 19). In that motion, the Trustee stated that she believed that the Volusia County suit was barred by the determination in the Orange County suit that Sunbum5 had committed a prior breach and that the cost of prosecuting the suit and the chance of success on the merits of that action warranted dismissing the suit. (Id. at 2). The Trustee stated that she believed "that there is no benefit to the estate in continuing with the Volusia County action" and requested relief from the automatic stay so that she could file a Notice of Voluntary Dismissal or otherwise dismiss the Volusia County suit. (Id.).

On May 24, 2010, Sunbum5 filed an Objection to the Trustee's Motion for Relief from Stay, incorporating therein a Motion to Compel Abandonment—rather than dismissal—of the Volusia County suit. (Bankr. Ct. Doc. 20). In that Objection, Sunbum5 noted that the Trustee's motion had been prepared by the Law Firm, and Sunbum5 argued that because in the Volusia County suit Sunbum5 sought injunctive relief and damages against other clients of the Law Firm—the Gregorys—the Law Firm's representation of the Trustee was "untenable." (Id. at 1). Sunbum5 further asserted that "[t]o avoid the conflict issue, the Trustee and [the Law Firm] have decided simply to dismiss the Volusia County case." (Id. at 1-2). Sunbum5 then stated that it believed the Volusia County suit "has substantial merit" and objected to its dismissal; Sunbum5 moved "to compel the Trustee's abandonment of the case so that the Debtor can resume control of its prosecution." (Id. at 2).

On July 19, 2010, the bankruptcy court held a hearing on the Trustee's Motion for

Relief from Stay, during which the issues raised in the parties' written filings were argued. (See Pro Memo, Doc. 23; July Hr'g Tr., Bankr. Ct. Doc. 63). At the conclusion of that hearing, the bankruptcy court announced that the Trustee's motion would be granted. (July Hr'g Tr. at 7).

On July 26, 2010, the bankruptcy court entered an Order (Bankr. Ct. Doc. 25) granting the April 14 Motion (Bankr. Ct. Doc. 14) by the Law Firm for an order determining that the Law Firm does not have a conflict of interest in representing the Trustee. On August 5, 2010, the court entered a written order (Bankr. Ct. Doc. 29) granting the Trustee's Motion for Relief from Stay solely to allow the Trustee to dismiss the Volusia County suit and denying Sunbum5's objection and motion to compel abandonment. Sunbum5 now appeals from both of these Orders.[7]

## II. Jurisdiction

"The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges . . . ." 28 U.S.C. § 158(a). As its statement of the basis of this Court's jurisdiction, Sunbum5 quotes the first portion of § 158(a)—pertaining to final orders—but does not elaborate on the finality of the appealed orders, which is less than obvious. "[I]t is a duty of this Court to determine whether it has jurisdiction over a particular matter, even if doing so raises the issue *sua sponte*." Walden v. Walker (In re Walker), 515 F.3d 1204, 1210 (11th Cir. 2008). Having done so, I have determined that the appealed

---

[7]The appeals were docketed separately in this Court but have been consolidated into Case No.6:10-cv-1268. (See Order, Doc. 15).

orders are indeed final, reviewable orders.

In <u>In re Walker</u>, the Eleventh Circuit examined the issue of whether an order removing or appointing a trustee was a "final" order, noting that other circuits were divided on the question. <u>Id.</u> The court ultimately agreed with the reasoning of the Third Circuit Court of Appeals in <u>In re Marvel Entertainment Group, Inc.</u>, 140 F.3d 463 (3d Cir. 1998), and concluded that an order removing a bankruptcy trustee was a final order. 515 F.3d at 1211. Although <u>In re Walker</u> did not involve appointment of counsel for the trustee or determination as to conflict of counsel, in <u>In re Marvel</u> the Third Circuit also found that "to delay the appeal of the order denying counsel until all matters in the bankruptcy have been conclusively determined is impractical, as in the situation of the order appointing the trustee." 140 F.3d at 471; <u>accord</u> <u>U.S. Tr. v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.)</u>, 180 F.3d 504, 508 (3d Cir. 1999) (characterizing review of order approving application for retention of counsel as a final order). Although courts are divided on whether orders regarding counsel's representation of a trustee are "final,"[8] presumably the Eleventh Circuit would agree with the Third Circuit's position, and therefore I conclude that the Order regarding the Law Firm's conflict of interest is appealable as a final order.[9] Additionally, the Eleventh Circuit has

---

[8]<u>See, e.g.</u>, <u>Bank Brussels Lambert v. Coan (In re Arochem)</u>, 176 F.3d 610, 619-20 (2d Cir. 1999) (noting split of authority, collecting cases, and concluding that order regarding disqualification of trustee's counsel was final).

[9]The Law Firm and the Trustee point out in their briefs that no appeal was taken, or objection made, to the initial Order (Bankr. Ct. Doc. 7) approving the Law Firm's employment. However, in essence the later Order (Bankr. Ct. Doc. 25) finding no conflict of interest reconsiders and updates the initial order after disclosure of the Volusia County suit. Thus, I find that the failure to challenge the initial Order does not bar review of the second Order.

recognized that "[a] stay-relief order is a final order that is immediately appealable," Old West Annuity & Life Ins. Co. v. Apollo Group, 605 F.3d 856, 862 (11th Cir. 2010), and orders on motions to compel abandonment of estate property have also been determined to be final, see, e.g., Alexander v. Jensen-Carter (In re Alexander), 289 B.R. 711, 712-13 (8th Cir. B.A.P. 2003).  Thus, I find that both of the orders before me are final orders.[10]

### III.  Standard of Review

A bankruptcy court's ruling as to employment of counsel is reviewed for abuse of discretion.  Blumenthal v. Myers (In re M & M Mktg., L.L.C.), 426 B.R. 796, 799 (B.A.P. 8th Cir. 2010); accord In re Pillowtex, Inc., 304 F.3d 246, 250 (3d Cir. 2002).  Decisions as to whether to grant relief from a stay and to compel abandonment of estate property are also reviewed for abuse of discretion.  See Barclays-Am./Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026 (11th Cir. 1989) (stay relief); Piatt v. Solomon (In re Piatt), Nos. NV-07-1319-JuKPa, 85-30956, 07-05, 2008 WL 8444827 (B.A.P. 9th Cir. May 29, 2008) (abandonment).  "A court abuses its discretion 'when its ruling is founded on an error of law or a misapplication of law to the facts.'  In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard."  M & M Mktg., 426 B.R. at 799 (footnotes omitted) (quoting First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow), 111 F.3d 604, 609 (8th Cir. 1997)); accord Hatcher v. Miller (In re Red Carpet Corp. of Panama City Beach), 902 F.2d 883, 890 (11th Cir. 1990) ("An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper

---

[10]Moreover, even if I am incorrect as to the finality of the orders, I find that leave to appeal should be and is granted to appeal them as interlocutory orders.

procedures, or bases an award upon findings of fact that are clearly erroneous.").

## IV.  Discussion

### A.  Law Firm Conflict of Interest

Sunbum5 asserts that the bankruptcy court erred in granting the Law Firm's motion for a determination that it did not have a conflict of interest in representing the Trustee. Sunbum5 notes that at the time the Law Firm filed its motion, the Law Firm represented the Gregorys, who were not only scheduled creditors of Sunbum5 but also defendants in the still-pending Volusia County suit—a cause of action that became property of the bankruptcy estate when Sunbum5 filed its Chapter 7 petition.  Sunbum5 argues that in light of the duties of a Chapter 7 Trustee, which include pursuing such causes of action for the estate's benefit, the Law Firm could not permissibly represent the Trustee.

The Law Firm and the Trustee respond that because the Law Firm had previous knowledge regarding the allegedly fraudulent transfer to MBN, the employment of the Law Firm by the Trustee "saved the bankruptcy estate considerable dollars in what would be needed to educate another attorney." (Answer Br. at 5).  They argue that as the bankruptcy case progressed and the fraudulent transfer issue was investigated, Sunbum5's counsel, in "an obvious diversionary tactic," began to insist that the Trustee pursue the Volusia County suit.  (Id.).  The Law Firm and the Trustee note that the Volusia County suit was not being pursued by Sunbum5 prior to its bankruptcy filing, and they also note that the application of issue preclusion based on the summary judgment in the Orange County suit is disputed. Further, they assert that the Trustee decided she wanted to dismiss the Volusia County suit based not on advice from the Law Firm but on conversations with Sunbum5's counsel.  They

aver that the Volusia County suit has no value and that Sunbum5's objection to the Law Firm's employment as counsel "is only taken to frustrate the Trustee from pursuing [the] fraudulent conveyance action." (Id. at 9).  In making these arguments, the Law Firm and the Trustee stop short of asserting that the Law Firm does not actually have a conflict of interest.[11]  Because of the existence of the conflict, however, the order at issue must be reversed.

"The employment of counsel by a bankruptcy trustee is governed by 11 U.S.C. § 327(a).  Under § 327(a), there are essentially two conditions for an attorney's employment: the attorney must be 'disinterested,' and the attorney cannot hold or represent an interest adverse to the estate."[12]  M & M Mktg., 426 B.R. at 801-02.  These two conditions overlap

_____

[11]Instead, they couch their arguments in terms such as"[t]his case involves objections, made only by the bankrupt Debtor . . . that [the Law Firm] has a conflict of interest" and "[t]he above facts support why the Bankruptcy Court found there was no conflict."  (Answer Br. at 1 & 8).

[12]Section 327(a) states:  "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  In the bankruptcy court and to some extent in their filings in this Court, the parties have focused not on § 327(a) on § 327(c), which provides: "In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."
However, § 327(c) "provides only that representation of a creditor is not alone sufficient grounds for disqualification; it does not prevent disqualification on other grounds." In re Dev. Corp. of Plymouth, Inc., 283 B.R. 464, 468 (Bankr. E.D. Mich. 2002).  The Gregorys are not merely creditors of Sunbum5—they are defendants in a pre-bankruptcy lawsuit filed by Sunbum5, and thus "representation of a creditor" is not the "sole" reason for disqualification of the Law Firm.  Therefore, § 327(c) does not come into play; even if it did, an actual conflict of interest such as exists here is disqualifying even under that subsection.

somewhat,[13] and only the "hold or represent an interest adverse to the estate" aspect need be addressed in this case.

The phrase "holding or representing an interest adverse to the estate" is not defined in the Bankruptcy Code, but "courts have defined [this phrase] as possessing, or serving as an attorney for a person possessing, either an 'economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under circumstances that render such a bias against the estate.'" Roger J. Au & Son, Inc. v. Aetna Ins. Co (In re Roger J. Au & Son, Inc.), 64 B.R. 600, 604 (N.D. Ohio 1986) (all but first alteration in original) (citation omitted), quoted in Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 360-61 (11th Cir. 1994); accord M & M Mktg., 426 B.R. at 802-03. An adverse interest "includes any interest or relationship, however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." In re

_____

Moreover, "[t]he requirements of subsection (a) are threshold requirements to be met even if subsection (c) is implicated. . . . Since subsection (c) of § 327 does not preempt the more basic requirements of subsection (a), the bankruptcy and district courts [have a] responsibility to approve the fiduciary's choice of professionals only when that professional's judgment and advocacy would be unclouded by divided loyalty." Interwest Bus. Equip., Inc. v. U.S. Tr. (In re Interwest Bus. Equip., Inc.), 23 F.3d 311, 316 (10th Cir. 1994). In short, § 327(a) mandates disqualification where counsel "represents an interest adverse to the estate."

[13]The Bankruptcy Code defines "disinterested person" as "a person that—(A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

Granite Partners, L.P., 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998).

The Trustee and the Law Firm suggest that the Law Firm was appropriately granted permission to represent both the Trustee and the Gregorys because the Volusia County suit had no value to the estate and was barred by the summary judgment previously entered in the Gregorys' Orange County suit. They also urge that the Trustee decided that the Volusia County suit was not worth pursuing and decided to dismiss it without advice or input from the Law Firm. However, these arguments put the proverbial cart before the horse and do not resolve the conflict of interest.

"The Bankruptcy Code provides that property of the debtor estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1149 (11th Cir. 2006) (quoting 11 U.S.C. § 541(a)(1)). "'Legal interests or equitable interests' include any causes of action [of the debtor]," and "[a] trustee, as the representative of the estate, succeeds into the rights of the debtor-in-bankruptcy." Id. Thus, "[a]t the moment [Sunbum5] filed [its] bankruptcy petition, the [Volusia County suit] became the property of [Sunbum5's] bankruptcy estate."[14] Reed v. City of Arlington, No. 08-11098, 2011 WL 3506100, at *3 (5th Cir. Aug. 11, 2011). "The Trustee became the real party in interest upon filing, vested with the authority and duty to pursue the [Volusia County suit] as an asset of the bankruptcy

---

[14]The fact that Sunbum5 did not disclose the Volusia County suit on its bankruptcy schedules does not affect its character as property of the estate or the Trustee's duty regarding such property. See Reed v. City of Arlington, No. 08-11098, 2011 WL 3506100, at *3 (5th Cir. Aug. 11, 2011); Lopez v. Specialty Rests. Corp. (In re Lopez), 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002) ("[T]he Action became property of the bankruptcy estate as of the Petition Date, even though the Action was not listed in the schedules . . . .").

estate." Id. (citing 11 U.S.C. § 704(a)(1), which provides that "[t]he trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves"). Because the Law Firm represented the Gregorys—defendants in the pending lawsuit in which the estate was the successor to Sunbum5 as the plaintiff—the Law Firm represented "an interest adverse to the estate" and did not qualify to serve as the Trustee's counsel under § 327(a).

The Trustee's decision as to what to do with the Volusia County suit could not properly be implemented through conflicted counsel. The crux of the problem is that the Trustee has a duty to evaluate and investigate potential claims, and "a lawyer cannot represent a trustee for the purpose of investigating [potential claims against] another, valuable client." Granite Partners, 219 B.R. at 37. "The attorney must look to all sources of recovery available to the estate and avoid any interest adverse to the estate which would render the search impossible." Kagan v. Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 646 (B.A.P. 1st Cir. 1999); see also In re Adam Furniture Indus., Inc., 158 B.R. 291, 301 (Bankr. S.D. Ga. 1993) ("Once counsel represents clients with conflicting interests, counsel may compromise representation of one client by failing to aggressively investigate or prosecute claims against the other client."); In re Paolino, 80 B.R. 341, 344-45 (Bankr. E.D. Pa. 1987) ("The debtors' cause of action against [the law firm's] client passed to the estate so as to be within the trustee's control. By representing the trustee, [the law firm] would, in effect, have been counsel to plaintiff and defendant in the same suit. Without question, that dual representation precluded [the law firm] from serving as trustee's counsel." (citation omitted)).

Although the Law Firm and the Trustee argue that the Volusia County suit was no

longer a viable cause of action and that the Trustee reached that decision herself, "[b]ankruptcy is concerned as much with appearances as with reality. No matter how thoroughly or fairly [the law firm] conducted the investigation, the question will always linger whether it held back, or failed to bite the hand that feeds it quite as hard as the circumstances warranted." Granite Partners, 219 B.R. at 38. "The jaundiced eye and scowling mien that counsel for the [trustee] should be casting . . . will likely not fall on counsel's other clients." Interwest, 23 F.3d at 317; see also Prince, 40 F.3d at 360 (noting that counsel's prior representation deprived Chapter 11 debtor—akin to a Chapter 7 trustee—"of a conflict-free, impartial, independent evaluation of the potential claims of and against his estate" and that "[w]hether a conflict-free bankruptcy lawyer would have [pursued potentially fraudulent transfer against counsel's prior client] is impossible for us to know"); M & M Mktg., 426 B.R at 803-04 (finding that attorney could not serve as counsel to trustee where such "employment would include investigating the potentially fraudulent transfers his [other] clients received [two years earlier]—which would create a clear conflict of interest"); Sturgeon State Bank v. Perkey (In re Perkey), 194 B.R. 846, 850-51 (Bankr. W.D. Mo. 1996) ("The bankruptcy estate and [the bank] are in a direct conflict over the validity of a lien. [The lawyer] represents [the bank] and, therefore, because he represents an interest adverse to the bankruptcy estate he is disqualified from serving as counsel for [the trustee] . . . .").

The Volusia County suit remained pending and had not been found to be barred by the Orange County judgment. Thus, the Law Firm—because it represented the Gregorys—was "serving as an attorney for a person possessing, either an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an

-16-

actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under circumstances that render such a bias against the estate." Accordingly, the bankruptcy court erred in finding that the Law Firm did not have a conflict of interest in representing the Trustee.

Furthermore, the concerns of efficiency and money-saving noted by the Law Firm and the Trustee—as well as their assertions of gamesmanship by Sunbum5's counsel—must yield to the Bankruptcy Code's requirement of conflict-free counsel. Cf. U.S. Tr. v. Price Waterhouse, 19 F.3d 138, 142 (3d Cir. 1994) (concluding that the "practical benefits of employing" accounting firm did not justify ignoring statutory requirements, noting that "[i]f it is thought that Section 327(a) should allow trustees . . . under some circumstances to employ professionals who are not 'disinterested,' an amendment of that provision should be sought from Congress"). "The purpose of section 327(a) . . . is to ensure impartiality in bankruptcy representation," Prince, 40 F.3d at 360, and it "is strictly enforced because of its impact on the integrity of the bankruptcy system," In re Am. Printers & Lithographers, Inc., 148 B.R. 862, 864 (Bankr. N.D. Ill. 1992); see also In re Dev. Corp. of Plymouth, Inc., 283 B.R. 464, 468 (E.D. Mich. 2002) ("Section 327(a) serves to insure that the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded." (internal quotation and citation omitted)).

The Law Firm represented an interest adverse to the estate and had a conflict of interest, and therefore it did not qualify to serve as counsel to the Trustee under 11 U.S.C. § 327(a). The bankruptcy court's order finding no conflict of interest must be reversed.

B. Abandonment

Sunbum5 also asserts that the bankruptcy court erred in denying Sunbum5's motion to compel abandonment and instead allowing the Trustee to dismiss the Volusia County suit. This argument is also well-taken.[15]

As mentioned earlier, 11 U.S.C. § 704(a)(1) provides that among the duties of a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." However, where property of the estate "is burdensome to the estate or . . . is of inconsequential value and benefit to the estate," the trustee may, after notice and a hearing, abandon such property. Id. § 554(a). Additionally, "[o]n request of a party in interest and after notice and a hearing, a court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate." Id. § 554(b). "The effect of abandonment is to divest the estate of control of the abandoned property and to revest title in the debtor. The property becomes part of [the]

_____

[15]The Order denying abandonment also granted the Trustee relief from the stay for the purpose of dismissing the Volusia County suit. However, Sunbum5 does not challenge the portion of the order allowing the lifting of the stay; in fact, Sunbum5 asserts that relief from the automatic stay of 11 U.S.C. § 362 was not necessary because the Volusia County suit—in which Sunbum5 was the plaintiff rather than the defendant—was not automatically stayed upon Sunbum5's Chapter 7 filing. Although this issue has not been briefed by the parties, Sunbum5 appears correct in this regard. See White v. City of Santee (In re White), 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995) ("[T]he primary purpose of § 362 is not applicable to offensive actions by the debtor in possession or bankruptcy trustee. Where the debtor has initiated a prepetition lawsuit against a creditor, the same policy considerations do not exist."). If no relief from the stay was necessary, it was not possible for the bankruptcy court to abuse its discretion in granting relief from the stay for the proposed purpose. See Chunn v. Chunn (In re Chunn), 106 F.3d 1239, 1242 (5th Cir. 1997) ("[T]he automatic stay did not apply to the support order. Therefore, the bankruptcy court could not have abused its discretion in lifting the stay to allow enforcement of the order." (footnote omitted)). The discussion herein of the second appealed order is confined to the issue of abandonment.

debtor's non-bankruptcy estate as if no bankruptcy occurred." <u>In re Argiannis</u>, 156 B.R. 683, 688 (Bankr. M.D. Fla. 1993) (citations omitted).

"[T]he principle of abandonment was developed by the courts to protect the bankruptcy estate from the various costs and burdens of having to administer property which could not conceivably benefit unsecured creditors of the estate." <u>In re Paolella</u>, 79 B.R. 607, 609 (Bankr. E.D. Pa. 1987). Moreover, the recognized purpose of § 554(b)—which allows parties in interest to move for abandonment—is to prevent trustees from unnecessarily administering assets that bring no value to the estate and to thwart the practice of trustees increasing their own commissions by not abandoning valueless property on their own. <u>See id.</u> ("'In enacting § 554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions. . . . Congress then gave the courts the power to order the trustee to abandon property at the request of a party in interest if the property was burdensome or valueless and of no benefit to the estate.'" (citations omitted) (quoting <u>Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)</u>, 816 F.2d 238, 246 (6th Cir. 1987))).

"[P]roof that an estate lacks equity in property sets forth at least a prima facie case [for the party seeking abandonment] that the property is of inconsequential value and benefit to the estate." <u>Id.</u> at 610. This showing "can then be rebutted by evidence that the estate does have some equity in the property" or evidence of "some other form of value or benefit to the estate which would accrue to it by retention of the property." <u>Id.</u> "Numerous courts have recognized that where the estate has no equity in a property, and the estate is to be liquidated, abandonment will virtually always be appropriate, because no unsecured creditor

could benefit from its administration." Id. at 609-10; see also Piatt v. Solomon (In re Piatt), Nos. NV-07-1319-JuKPa, 85-30956, 07-05, 2008 WL 8444827, at *6-7 (B.A.P. 9th Cir. May 29, 2008) ("[I]f the court denies the motion [for abandonment], it follows that there must be findings that administration of the property will cause either benefit or value to the estate. . . . [U]nless the trustee can present legitimate, persuasive reasons . . . to justify his continued efforts to sell the property, abandonment would seem appropriate.").

In the instant case, the Trustee and the Law Firm argued to the bankruptcy court—in a written motion and at two hearings—that continuing with the Volusia County suit would bring no benefit to the estate. (See Bankr. Ct. Doc. 19 at 2; May Hr'g Tr. at 12; July Hr'g Tr. at 3-4). Notwithstanding that repeated assertion, the Trustee and the Law Firm did not propose abandonment of the suit as estate property but instead requested permission to dismiss the suit. Sunbum5 argued that in light of the Trustee's belief that the Volusia County suit had no merit, the appropriate result under the Bankruptcy Code was that the property be abandoned. Nevertheless, the bankruptcy court entered an order allowing the Trustee to dismiss the suit and denying Sunbum5's motion to compel abandonment. This was error.

Upon motion of a party in interest, where there is no benefit to administering estate property, that property should be abandoned. See Paolella. Allowing the Trustee to dismiss the Volusia County suit potentially resulted in unnecessary administrative expenses—defeating the purpose for which § 554(b) was enacted—and no persuasive reason for not abandoning the property has been presented. Moreover, no provision in the Bankruptcy Code allowing for the result obtained below has been identified. If the Trustee believed the suit had value, she should have pursued it; if she believed it did not, the suit

should have been abandoned. Cf. Wissman v. Pittsburgh Nat'l Bank, 942 F.2d 867, 873 (4th Cir. 1991) ("If, after a hearing, the trustee refuses to abandon or join the action, the bankruptcy could should compel abandonment. In this way, the debtor will be free to pursue the action and will be entitled to the whole recovery, if any."). Dismissal of the suit served only one apparent purpose—getting rid of the source of the conflict of interest faced by the Law Firm. As discussed earlier, the existence of that conflict rendered the Law Firm's representation of the Trustee inappropriate and could not properly be resolved through dismissal of the lawsuit via the conflicted counsel.

### V.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that the Order (Bankr. Ct. Doc. 25) finding no conflict of interest and the Order (Bankr. Ct. Doc. 29) granting relief from stay and denying abandonment are **REVERSED**. The Clerk is directed to enter a judgment to this effect and thereafter to close the file.

**DONE** and **ORDERED** in Orlando, Florida this 30th day of September, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party